**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALBERTO L. TORRES,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:16-2309** |
| **v.** | : | **(JUDGE MANNION)** |
| **KEVIN KAUFFMAN,** | : | |
| **Respondent** | : | |

**MEMORANDUM**

Petitioner, Alberto L. Torres, an inmate confined in the Smithfield State Correctional Institution, Huntingdon, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He challenges his conviction and sentence imposed in the Court of Common Pleas of Franklin County. Id. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.

I. **Background**

The factual background, extracted from the Pennsylvania Superior Court's March 21, 2014 Memorandum Opinion, affirming Petitioner's conviction and sentence, is as follows:

As in many bar fights, this case began with a perceived personal slight. The place was the intersection of Franklin and King Streets, the establishment Fran's Inn, the time the overnight hours of September 8–9, 2011, and the primary combatants Torres and Antonio Harrison. The brawl began near the pool table in the back room of the bar. N.T., 12/4/12 (First Jury Trial), at 40–41; N.T., 1/2/13 (Second Jury Trial), at 50–51. Torres was shooting pool, a visibly drunk Harrison bumped into Torres, and words were exchanged. Torres pushed Harrison with his pool cue, and Harrison—by far the bigger of the two—coldcocked Torrs in the face with a standard right hook. N.T. (First Trial) 40–42, 51–55, 66–72; N.T. (Second Trial) 50–51, 80–81. The blow sent Torres flying backwards. He recovered and tackled Harrison to the ground where more punches were thrown. After about 20 seconds, Robert Stanley, Harrison's good friend, and another person broke up the fight. N.T. (First Trial) 42–44; N.T. (Second Trial) 51–55. The bartender summoned police, and Torrs and his companion exited the bar. N.T (First Trial) at 44. A few seconds later, Harrison and Stanley left, too, to go to Stanley's vehicle. Id. at 49–50.

The participants did not part ways. On the street outside of the bar, Torres and the other individual confronted Harrison and Stanley from a distance of about 30 to 40 yards, on the same side of King Street. Id. at 50–51. Torres waived a handgun in the air and pointed it at Harrison and Stanley. Id. at 51–53, 78–80; N.T. (Second Trial) 58–60, 82–85. Stanley yelled at Torres to put the gun away—he had no problem with guns except when they are pointed at him. N.T. (First Trial) 51–53, 65. Torres' companion tried to pull him into a car and away from confrontation, but Torres shrugged off the sage gesture. Id. at 53. Torres pointed the weapon at Harrison and Stanley's direction and fired. Id. at 53–55. Stanley ducked, and heard two shots, then a third, and then the sound of the third bullet ricocheting off of a metal object. Id. In all, Stanley heard three shots. Id. He never saw Torres fire the gun, but he saw Torres holding the gun immediately before he heard the shots. Id. at 85–86.

In addition to Stanley's account (he has multiple convictions of felony *crimena falsi*) the Commonwealth showed Fran's Inn's surveillance videos to the jury. See id. at 60–63. The videos captured the fight inside the bar, the participants exiting the bar, Stanley and Harrison's reaction to the gunshots, and the arrival of police.

Chambersburg Police responded to the 911 dispatch call with caution because of the report of shots fired. Id. at 93–96. An officer performed a traffic stop of a car in which Torres was the passenger. Id. at 98–102. Police found no firearms in the car or on Torres, and he denied having any. Id. at 98–102, 103–04, 108. Indeed, Torres could not use or possess firearms because of a prior conviction. N.T. (Second Jury Trial) 159. However, an officer found a pair of brass knuckles in Torres' pants pocket—something that no person may use or possess. N.T. (First Jury Trial) 99–100. And Torres also told the arresting officer that he knew who had the gun, and it was "highly likely" that shell casings would be found at the scene. Id. at 103–04. Torres said that Chambersburg is a pretty bad city and that finding shell casings in the street was not uncommon. Id. In fact, investigating police officers recovered two .25 caliber shell casings from the street where the shots were fired. Id. at 124–29, 131–32. Contrary to Torres' belief, one of the investigating officers testified that he had never found shell casings randomly lying in that street in 20 years as a Chambersburg police officer. Id. at 132–33. The casings were found 15 to 20 yards from the corner of King and Franklin—where the parties had exited Fran's Inn. Id. at 127–29.

On December 4, 2012, a jury convicted Torres of Counts (1) aggravated assault, (2) simple assault, (3) recklessly endangering another person (REAP), and (5) possession of an offensive weapon.[1] The Court had severed Count (4) persons not to possess firearms[2] from the other charges. On January 2, 2013, a second jury convicted Torres of that count. On March 27,

---

[1] 18 Pa.C.S.A. §§2702(a)(1), 2701(a)(3), 2705 and 908(a), respectively.

[2] 18 Pa.C.S. § 6105(a)(1).

2013, the Court sentenced Torres to an aggregate of 11 and 1/2 to 23 years in state prison.[3]

Commonwealth v. Torres, No. 1259 MDA 2013, 2104 WL 10965713 (Pa. Super. filed March 21, 2014) (unpublished memorandum), appeal denied, 97 A.3d 744 (Pa. 2014).

The procedural background is extracted from the Pennsylvania Superior Court's July 11, 2017 Memorandum Opinion affirming the dismissal of Petitioner's second petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§9541-9546, and is as follows:

> [Appellant] first filed his [f]irst [PCRA petition] on November 21, 2014. Th[e PCRA c]ourt appointed Cayla E. Amsley, Esq. to represent [appellant] in his First PCRA proceedings. A hearing was held on May 27, 2015. On August 20, 2015, th[e PCRA c]ourt issued an Order and Opinion dismissing [appellant's] First PCRA. [Appellant] filed a Notice of Appeal of this denial on September 15, 2015. The Superior Court affirmed th[e PCRA c]ourt's denial of [appellant's] First PCRA on May 4, 2016. [See **Commonwealth v. Torres**, 151 A.3d 1135 (Pa. Super. 2016) (unpublished memorandum), **appeal denied**, 158 A.3d 76 [Pa. 2016).] On September 27,

---

[3] The Court's individual sentences are as follows:
Count 1 (aggravated assault): 78–156 months (with credit for time served);
Count 4 (persons not to possess firearms): 60–120 months consecutive to Count 1; and
Count 5 (possession of offensive weapons): 12–60 months concurrent with Count 1.
Counts 2 (simple assault) and 3 (REAP) merged with Count 1.

2016, the Pennsylvania Supreme Court denied [appellant's] Petition for Allowance of Appeal. [**Id**.]

[Appellant] filed his [s]econd [PCRA petition] on November 7, 2016, raising a claim of ineffective assistance of First PCRA Counsel and Trial Counsel, Drew Deyo, Esq. On December 9, 2016, th[e PCRA c]ourt issued a Notice of Intent to Dismiss [appellant's] Second PCRA [pursuant to Pa.R.Crim.P. 907 (a)] due to timeliness and lack of jurisdiction to address the merits. [Appellant] filed a Rule 907(1) Response on December 27, 2016.

PCRA court opinion, 4/28/17, at 1-3 (footnotes consolidated; Internal case citations added).

On February 9, 2017, the PCRA court dismissed appellant's instant petition without a hearing. Appellant filed a ***pro se*** notice of appeal on March 3, 2017. That same day, the PCRA court ordered appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). On March 22, 2017, appellant filed a timely Rule 1925(b) statement and the PCRA court issued its Rule 1925(a) opinion on April 28, 2017.

Appellant raises the following issued for our review:

1. DID THE PCRA COURT ABUSE ITS DISCRETION BY DISMISSING APPELLANT'S SECOND PCRA PETITION AS UNTIMELY WHERE HE SUFFICIENTLY PLED AN EXCEPTION TO THE STATUTORY TIMELINESS REQUIREMENT[?]

2. SHOULD THIS COURT REVERSE THE PCRA COURT'S ORDER DENYING THE SECOND PCRA PETITION WITHOUT A HEARING, WHERE APPELLANT RAISES A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER HE PLED [THAT] HE ACTED DILIGENTLY[?]

> 3.   DID THE PCRA COURT ERR IN NOT RESTORING APPELLANT'S PCRA RIGHTS WHERE OBVIOUS OMISSIONS BY COUNSEL RESULTED IN THE DENIAL OF MEANINGFUL PCRA REVIEW RENDERING THE PCRA PROCEEDING FUNDAMENTALLY UNFAIR[?]

Appellant's brief at 3.

(Doc. 22 at 16-19). By Memorandum Opinion dated July 11, 2017, the Superior Court affirmed the dismissal of Petitioner's second PCRA petition. Id.

## II.   **Grounds For Relief**

Torres asserts the following grounds for relief:

1. Trial counsel was ineffective for failing to object to Petitioner wearing a stun belt at trial.

2. PCRA counsel ineffective for failing to include in his PCRA petition that trial counsel was ineffective for failing to investigate the clothing seized from petition and investigating it to see if it had gunshot residue on it.

(Doc. 1 at 5-11).

## III.   **Standard of Review**

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his

confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973).  28 U.S.C.

§2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States
>
> ....
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Section 2254 sets limits on the power of a federal court to

grant an application for a writ of habeas corpus on behalf of a state prisoner.

Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d

402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed

by a state prisoner only "on the ground that he is in custody in violation of

the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).

This limitation places a high threshold on the courts. Typically, habeas relief

will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994) (citations omitted).

Section 2254(d)(1) applies to questions of law and mixed questions of law and fact. In applying it, this Court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. §2254(d)(1). It is "'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision'". Dennis v. Sec'y, Pennsylvania Dep't of Corr., 834 F.3d 263, 280 (2016) (en banc) (quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, this Court must determine whether the Superior Court's adjudication of the claim at issue was "contrary to" that law. Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (explaining that the "contrary to" and "unreasonable application of" clauses of §2254(d)(1) have independent meaning). A state-court adjudication is "contrary to ... clearly established Federal law, as determined by the

- 8 -

Supreme Court of the United States" §2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," id. at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. Williams, 529 U.S. at 406. Therefore, the issue in most federal habeas cases is whether the adjudication by the state court survives review under §2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case'." Dennis, 834 F.3d at 281 (quoting Williams, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. Id. He must show that it "'*was objectively unreasonable'*." Id. (quoting Williams, 529 U.S. at 409) (emphasis added by Court of Appeals).

This means that Petitioner must demonstrate that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See Lockyer, supra, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, §2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under §2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

Id. at 102.

The standard of review set forth at §2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" Burt v. Titlow, 571 U.S. 12, 18 (2013).7 "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings."

- 10 -

Dennis, 834 F.3d at 281 (quoting §2254(d)(2) and citing Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance'." Titlow, 571 U.S. at 18 (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)); see Rice v. Collins, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. Wood, 558 U.S at 301 (quoting Collins, 546 U.S. at 341-42).

If the Superior Court did not adjudicate a claim on the merits, the Court must determine whether that was because Petitioner procedurally defaulted it. If the claim is not defaulted, or if Petitioner has established grounds to excuse his default, the standard of review at §2254(d) does not apply and the Court reviews the claim *de novo*. See, e.g., Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). However, in all cases and regardless of whether the standard of review at §2254(d) applies, the state court's factual determinations are presumed to be correct under §2254(e)(1) unless

Petitioner rebuts that presumption by clear and convincing evidence. Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010); Nara v. Frank, 488 F.3d 187, 201 (3d Cir. 2007) ("the §2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of §2254(d).") (citing Appel, 250 F.3d at 210).

Torres' case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## IV.  **Discussion**

Petitioner raises two grounds of ineffective assistance of counsel.

The clearly established ineffective assistance of counsel standard as determined by the Supreme Court of the United States is as follows:

> Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court." Williams, 529 U.S. at 391, 120 S.Ct. 1495. Under Strickland, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687, 104 S.Ct. 2052.  For the deficient performance prong, "[t]he proper measure of attorney performance remains

- 12 -

simply reasonableness under prevailing professional norms." Id. at 688, 104 S.Ct. 2052. This review is deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

Id. at 689, 104 S.Ct. 2052

Not every "error by counsel, even if professionally unreasonable, ... warrant[s] setting aside the judgment of a criminal proceeding." Id. at 691, 104 S.Ct. 2052. "Even if a defendant shows that particular errors of counsel were unreasonable, ... the defendant must show that they actually had an adverse effect on the defense"; in other words, the habeas petitioner must show that he was prejudiced by counsel's deficient performance. Id. at 693, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.

In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding.... In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id. at 696, 104 S.Ct. 2052.

Rainey v. Varner, 603 F.3d 189, 197–98 (3d Cir. 2010).

When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.

The Superior Court noted the following:

…[C]ounsel is presumed effective and it is the defendant's burden to prove ineffectiveness. **Commonwealth v. Martin**, 5 A.3d177, 183 (Pa. 2010). To overcome this presumption, Appellant must demonstrate that:

(1) the underlying claim has arguable merit; (2) counsel did not have a reasonable basis for his actions or failure to act; and, (3) the petitioner suffered prejudice as a result of counsel's deficient performance. Id. An appellant's claim fails if he cannot meet any of these prongs. **Id**.

(Doc. 22 at 45).  The Third Circuit has specifically held that the very ineffectiveness assistance of counsel test relied upon by the Superior Court in this matter is not contrary to the Supreme Court's Strickland standard.  See Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Torres does not argue otherwise. Because the Superior Court did not apply law contrary to clearly established precedent, Torres is entitled to relief only if he can demonstrate

- 14 -

that its adjudication involved an unreasonable application of <u>Strickland</u> or was based on an unreasonable determination of the facts in light of the evidence.

### 1. <u>Ground One</u>

Petitioner claims that his Fifth, Sixth and Fourteenth Amendments were violated due to counsel's failure to object at trial to the fact that "Petitioner was made to wear a shock-belt under his clothing during the jury trial process," which Petitioner claims, "the Court did not mandate" and it "severely hindered Petitioner from testifying on his own behalf." (Doc. 1 at 5).

Petitioner raised this claim in his timely First PCRA petition. The PCRA court, in a very well-reasoned Opinion, found Petitioner not entitled to relief, and the Superior Court adopted the PCRA court's opinion as their own as follows:

> As noted above, Appellant argues that his counsel was ineffective in failing to object when he was required to wear a stun belt. Appellant's Brief at 10. Appellant baldly asserts that, because he was made to wear the stun belt, he was nervous and unable to assist in his defense. Appellant's Brief at 12. In **Commonwealth v. Lopez**, 854 A.2d 465, 469-470 (Pa. 2004), our Supreme Court addressed a nearly identical claim of error:
>
>> It is difficult to ascertain what prejudice allegedly resulted from appellant's wearing the belt, beyond the prejudice of not being able to escape. Appellant does not allege the jury was prejudiced by seeing him in the belt, but

- 15 -

instead claims it constricted his breathing and movement, thereby interfering with "his Sixth Amendment right to assist his counsel." Appellant's Brief, at 8. However, appellant has not demonstrated that but for the belt, the outcome of this trial would have differed. Accordingly, his claim of trial counsel's ineffectiveness fails, and this necessarily defeats his claim of appellate counsel's ineffectiveness.

**Lopez**, 854 A.2d at 469-470.

The same is true in the case at bar. Appellant does not argue that the jury saw the stun belt, only that Appellant was nervous while wearing it. Appellant's Brief at 12-13. The PCRA court addressed Appellant's issue as follows:

> [Appellant] testified at this PCRA hearing that he was outfitted with a "RACC" belt, which is a form of a stun belt. The belt is wrapped around the defendant's waist and is remotely operated by a Sheriff's Deputy in the courtroom. The stun belt emits an electric shock to immobilize a defendant. The stun belt was affixed to [Appellant's] waist and was beneath his clothing. All testimony confirms that the belt was not visible to the public or jurors, and no mention of it was ever made to the jurors. [Appellant] asserts that the compulsion to wear the stun belt inhibited his free participation in the course of the trial, and that it "made him nervous." Furthermore, he asserts that it inhibited his ability to testify on his own behalf at trial, thus violating his 6th Amendment rights to counsel and a fair trial.

> [Appellant's] trial counsel, Drew Deyo, testified that he did not notice that [Appellant] was wearing the stun belt; he was not aware of the Sheriff's policy which requires all defendants at trial to wear a stun belt, and that he had in fact advised [Appellant] against testifying as his testimony would be more harmful than helpful to him. He assumed that [Appellant] would be claiming his innocence if he testified.

- 16 -

This Court notes that the trial transcript reveals at the conclusion of the testimony of the trial on January 2, 2013, [Appellant] was given an opportunity to either assert his 5th Amendment right or indicate if he wished to testify. The colloquy was conducted outside of the presence of the jury after [Appellant] was placed under oath. The Court first confirmed that [Appellant] had the benefit of his privately retained counsel, Drew Deyo, Esquire. The Court confirmed that [Appellant] understood that he could not be compelled to make any statements under the 5th Amendment to the Constitution. The Court also confirmed with [Appellant] that the trial was the time and place for him to address the jury if he wished to do so. [Appellant] answered in the affirmative that he understood all of his rights. Furthermore, the Court confirmed that [Appellant] understood that he could ask to come forward a day, a week, 30 days, or a year from now and indicated that he was denied an opportunity to testify on his own behalf. [Appellant] confirmed that he understood that the trial was the time and place to address the jurors. By this Court's recollection, he did not assert that he was nervous, concerned, or fearful of being shocked by the stun belt. [Appellant] confirmed in the colloquy with the Court that he had adequate time to discuss the issue of whether or not he should testify with his attorney. He also indicated he was exercising his right to remain silent. (Pgs of trial transcript 161-162).

In the case of Comm. v. Romero, 595 Pa. 275, 297-298, 938 A.2d 362, 375 (Pa. 2007), the Pennsylvania Supreme Court found that where a stun belt was not visible to the jury and was underneath the appellant's clothing, that "a jury could not have been prejudiced by what it could not see." Id. In that case, the Defendant Romero offered no testimony regarding the psychological effect upon him. In this instance, the Court finds that [Appellant] has offered testimony relating [to] the alleged psychological effect, yet the Court is of the

opinion that having heard [Appellant's] testimony, that such testimony is not credible in light of the fact that the Court took the time to affirmatively confirm whether or not [Appellant] wished to testify at the time of trial. Furthermore, by his own counsel's testimony, there appeared to be no visible signs to his trial counsel that he was somehow psychologically affected by wearing the stun belt. In fact, his counsel was unaware that he was wearing it at the time of his trial. If the application and use of such a device was causing [Appellant] stress at trial, this Court could reasonably expect that [Appellant] would offer a complaint to his counsel about the use of such a restraint, and request that it be addressed. In fact, [Appellant] acknowledges that although wearing it to him may have seemed "weird," it was not until he was transported to SCI Smithfield and presumably began to investigate such issues that the question of illegally of its use was brought to this attention. However, a challenge regarding illegality is not the sole inquiry per the case law of the Commonwealth of Pennsylvania. There must be more than mere alleged illegal use. It must affect or prejudice the [d]efendant's case in the eyes of the jury or to have such a psychological impact that it would deny him the opportunity to fully participate in the trial. The Court considers [Appellant's] testimony at his PCRA hearing to be self-serving in that he is now attempting to contradict all the evidence which points to the contrary. Simply by saying that he could not adequately voice his concerns about the use of the belt to his counsel is not credible. The Court takes into account that Mr. Deyo was his privately retained counsel and presumably the relationship was one such that [Appellant] had assurances of the attorney-client relationship and would have trusted such matters to his counsel. The complaint that [Appellant] is now lodging about the impact that the stun belt had upon him are in this Court's view not credible. For that reason, the Court finds that there is no evidence to support [Appellant's] claim that there was a

psychological impact upon him which affected his participation in the trial.

In Comm. v. Lopez, 578 Pa. 545, 553, 845 A.2d 465, 469-470 (Pa. 2004), the Pennsylvania Supreme Court has established that when a Defendant is asserting a claim of ineffective assistance of counsel, he must prove "that but for the belt, the outcome of his trial would have been different." Id. As this Court has stated, [Appellant's] testimony in this area was not persuasive or credible. The Court finds that it is at best self-serving, and while [Appellant] may have had concerns about wearing the belt, he was given ample opportunities to reveal to counsel and the Court what impact it was having upon him throughout the course of the trial. This Court is of the opinion that [Appellant] has failed to show how he was psychologically impacted or so affected that he could not engage with his counsel throughout the course of trial. In fact, Mr. Deyo confirmed that if there was any concern at all raised at any time throughout the course of the trial, he would have brought it to the attention of the court and insisted that it be addressed.

For these reasons, [Appellant] has failed to show that but for the wearing of the stun belt, there would have been any change in the result of the trial. For those reasons, his claim of ineffective assistance of trial counsel must fail.

In his brief, Appellant also challenges the policy of wearing the stun belt as a basis upon which counsel should have objected. Appellant's Brief at 10. Appellant avers that, without a finding of "extreme need," the policy is a violation of Pennsylvania law. **Id**. However, the case Appellant cites is a non-precedential memorandum from the Commonwealth Court, **Brown v. Bovo**, 2339 CD 2008, 980 A.2d 223 (Pa. Cmwlth. Filed September 14, 2009) (unpublished memorandum). In addition to **Brown** being a non-precedential decision, the "extreme need" language cited therein is in connection a defendant in a federal case appearing in the courtroom in visible leg-irons and handcuffs. **Lemons v.**

**Skidmore**, 985 F.2d 354, 359 (7ᵗʰ Cir. 1993). However, **nothing in the case at bar reveals that Appellant wore shackles or that the stun belt was visible to the jury**.[4] Under the facts presented here, the "extreme need" analysis is inapplicable because the stun belt was not visible, and we have already concluded that Appellant failed to show prejudice.[5]

For the reason set forth about, Appellant's ineffectiveness claim fails. Accordingly, we affirm he order denying Appellant's PCRA petition. **Martin**, 5 A.3d at 183.

(Doc. 22 at 46-50) (emphasis in original).

It is well-settled that shackling a defendant during trial is an extraordinary measure; "no person should be tried while shackled ... except as a last resort." Illinois v. Allen, 397 U.S. 337, 344 (1970). The United States Supreme Court recognized that a defendant is prejudiced when he appears before a jury in shackles: "Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the

---

[4] "The Fifth and Fourteenth Amendments prohibit the use of **physical restraints visible to the jury** absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." **Deck v. Missouri**, 544 U.S. 622, 642 (2005) (emphasis added).

[5] We must also point out that counsel testified credibly that Appellant never informed him that he was wearing the stun belt. While we have already concluded that Appellant failed to establish prejudice, were we to reach this issue, we would not find that counsel was ineffective for failing to raise an issue that Appellant did not reveal. **See Commonwealth v. Willis**, 68 A.3d 997, 1009-1010 (Pa. Super. 2013) (finding that counsel was not ineffective for failing to raise a claim which she was unaware).

- 20 -

defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." Id. at 344, 90 S.Ct. 1057. The Court added, however, that sometimes "binding and gagging might possibly be the fairest and most reasonable way to handle" a disruptive defendant. Id. As the Supreme Court explained in Deck v. Missouri, 544 U.S. 622 (2005), "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination ... that they are justified by a state interest specific to a particular trial." Id. at 629. The instant matter differs from Deck because petitioner was not visibly shackled. The Supreme Court has yet to conclude that a restraint the jury cannot see violates dues process. In the instant action, it has been more than established that the stun belt was not visible to the public or the jury. Thus, Petitioner has failed to show that but for the wearing of the stun belt, there would have been any change in the result of his trial. Nor has Petitioner shown that he was prejudiced by trial counsel's failure to object to the use of the stun belt.

Thus, the Court finds that the state courts' review of Petitioner's first claim did involve an unreasonable application of Strickland or was based on an unreasonable determination of the facts in light of the evidence. Petitioner is not entitled to relief on this claim.

## 2. **Ground Two**

Petitioner claims that PCRA counsel was ineffective for failing to include in his PCRA petition that trial counsel was ineffective for failing to investigate the clothing seized from Petitioner and investigate it to see if it had gunshot residue ("GSR") on it. (Doc. 1 at 6). Petitioner claims that he included this issue in his initial PCRA petition but when PCRA counsel filed his amended petition, it was omitted. (Doc. 8 at 22). Petitioner attempted to address this issue in his Second PCRA petition, however, the petition was found to be untimely. Id. Thus, the petition is unexhausted.

Petitioner must exhaust his federal constitutional claims in state court before raising them in a federal habeas petition. 28 U.S.C. §2254(b)(1); Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509, 518 (1982). A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which, in Pennsylvania, includes review at least through the Superior Court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Lambert v. Blackwell, 387 F.3d 210, 233–34 (3d Cir. 2004). The failure to properly present claims to the state court generally results in a procedural default. Lines v. Larkin, 208 F.3d 153, 165–66 (3d Cir. 2000). A federal court is precluded from reviewing

- 22 -

the merits of a procedurally defaulted claim if the state courts relied on an independent and adequate state ground to foreclose review of the federal claim. Beard v. Kindler, 558 U.S. at 53 (2009).

Here, Petitioner's Second Ground is unexhausted because he has not presented it through one complete round of Pennsylvania's established appellate review process. O'Sullivan, 526 U.S. at 845. Petitioner raised his second ground of ineffectiveness claim in his Second PCRA, which was dismissed as untimely. Therefore, this claim has not completed one full round of the State's appellate review process. Accordingly, this claim is unexhausted and procedurally defaulted as Petitioner would now be precluded from raising it under the PCRA statute of limitations and Pennsylvania's PCRA waiver rule, 42 Pa.C.S. §9544(b).[6] The waiver rule codified at §9544(b) is an independent and adequate state rule which bars federal habeas review. Patton v. Sup't Graterford SCI, 2017 WL 5624266, at *1 (3d Cir. 2017) ("[T]he state court's reliance on 42 Pa. Cons. Stat. §9544(b) provides an independent and adequate ground to support the judgment.").

---

[6] 42 Pa. Cons. Stat. §9544(b) provides: "For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."

Because Petitioner's second claim is procedurally defaulted, the Court may not review the merits unless Petitioner has established cause and prejudice, or a fundamental miscarriage of justice, to excuse the procedural default. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. 722, 750 (1991). Liberally construing Petitioner's *pro se* filings, and giving him every benefit of the doubt, he arguably asserts the procedural default is excused under Martinez v. Ryan, 566 U.S. 1 (2012), due to PCRA counsel's alleged ineffectiveness. (Doc. 8).

Martinez recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default, holding "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. The Third Circuit has provided that "'[w]here state law requires a prisoner to raise claims of ineffective assistance of trial counsel in a collateral proceeding, rather than on direct review, a procedural default on those claims will not bar their review by a federal habeas court if three conditions are met: (a) the default was caused by ineffective assistance of post-conviction counsel or the absence of counsel; (b) in the initial-review collateral proceeding (i.e., the first collateral proceeding in which the claim

could be heard); and (c) the underlying claim of trial counsel ineffectiveness is 'substantial'." Preston v. Superintendent Graterford SCI, 902 F.3d 365, 376 (3d Cir. 2018) (quoting Cox v. Horn, 757 F.3d 113, 124 (3d Cir. 2014) (quoting Martinez, 566 U.S. at 14, 132 S.Ct. 1309)).

The procedural default on Petitioner's Second Ground is not excused under Martinez. Petitioner's underlying, procedurally defaulted ineffectiveness claim is not "substantial" under Martinez. 566 U.S. at 14. Whether a claim is "substantial" under Martinez is "analogous to the substantiality requirement for a certificate of appealability." Cox, 757 F.3d at 119 (citing Martinez, 566 U.S. at 14, 132 S.Ct. 1309). "Thus, the question for Martinez purposes, is merely whether 'reasonable jurists could debate' that [Petitioner's claim] has merit, or whether the claim is 'adequate to deserve encouragement to proceed further'." Preston, 902 F.3d at 377 (quoting Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 483, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Petitioner's underlying claim is without merit because it does not satisfy the ineffectiveness requirements of Strickland. First, trial counsel did not perform deficiently. Whether to independently test evidence is a tactical decision, which is given deference in evaluating effectiveness of counsel.

- 25 -

Strickland, 466 U.S. at 690. Courts have found counsel acted reasonably in failing to test evidence where doing so would not exculpate the defendant and in fact could run the risk of further implicating him, and where counsel used the lack of police testing to argue to the jury that the investigation into the case was incomplete. See, e.g. Curry v. Secretary, Florida Department of Corrections, 735 Fed.Appx. 609, 612 (11th Cir. 2018); U.S. v. Roberts, 417 Fed.Appx. 812, 823 (10th Cir. 2011); Baker v. Yates, 2007 WL 2156072 *15 (S.D. CA. 2007). In this case, the police did not test Petitioner's clothing so that the prosecution could not and did not use it as evidence to present to the jury. If defense counsel's testing indeed revealed GSR on Petitioner's clothes, it would only have served to further inculpate him in the crime. This result may have had the adverse effect of assisting the Commonwealth in its case against Petitioner. Because trial counsel's failure to test for GSR can be construed as a reasonable trial strategy, Petitioner's claim for ineffective assistance is without merit, and PCRA counsel was not ineffective for failing to raise it on collateral review.

Second, under Strickland, the Petitioner must show that the alleged ineffectiveness of counsel actually prejudiced Petitioner's case. 466 U.S. at 693. Here, Petitioner has not shown that counsel was ineffective for failing to test his clothing for GSR. At Petitioner's trial, the Commonwealth did not

present any GSR evidence against him. A finding that there was no GSR on Petitioner's clothes would not necessarily have exculpated him. See Chambers v. Sec'y Pa. Dep't. of Corr., 442 F. Appx. 650, 656 (3d Cir. 2011) ("[A]bsence of evidence is not evidence of absence."). Additionally, the evidence actually presented against Petitioner at trial, including eyewitness testimony that Petitioner waived a handgun in the air and pointed it at Harrison and Stanley, was strong. Therefore, Petitioner was not prejudiced by trial counsel's decision not to test his clothing for GSR. Petitioner's Second Ground is not substantial and does not warrant habeas review under the Martinez exception to procedural default.

Accordingly, because Petitioner's claim of ineffectiveness for failure to test for GSR is procedurally defaulted, the Court will deny relief on this claim.

## V.    Certificate of Appealability

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" Tomlin v. Britton, 448 Fed.Appx. 224, 227 (3d Cir. 2011) (citing 28 U.S.C. §2253(c)). "Where a district court has rejected the constitutional claims on the merits, ... the petitioner must

- 27 -

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

For the reasons set forth herein, Petitioner has not made a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable that Court's assessment of the claims debatable or wrong. Accordingly, a COA will not issue.

## VI. **Conclusion**

For the reasons set forth above, the Court will deny the petition for writ of habeas corpus. A separate order shall issue.

s/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States District Judge**

**DATE: June 27, 2022**

16-2309-01

- 28 -